## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**SYSCO PHILADELPHIA, LLC,**

               Plaintiff,

    v.

**CLAUDIO SILVA,**

               Defendant.

Case No.: 2:20-cv-06182

## [PROPOSED] TEMPORARY RESTRAINING ORDER

**AND NOW**, this _____ day of December, 2020, upon consideration of Plaintiff Sysco Philadelphia, LLC's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, and the Memorandum of Law in Support thereof, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and that a **RESTRAINING ORDER** is hereby issued enjoining and restraining:

1.     Defendant Silva from violating, or participating in the violation of, any of the terms of his Protective Covenant Agreement.

2.     Defendant Silva from directly or indirectly using, disclosing, or retaining any confidential, proprietary or trade secret information of Sysco.

3.     Defendant Silva from directly or indirectly soliciting or communicating with Silva's Covered Customers, including but not limited to Saker's Village; Talluto's, Altomontes, Bells and Colonial; Rastelli's and Haddon; Murphy's; Mccafrey's; and Starr.

It is hereby further **ORDERED**:

4.     Within two (2) business days of the date of this Order, Defendant Silva is directed to return to counsel for Sysco all Sysco documents, records, and materials of any kind in Silva's

possession, custody or control, incorporating Sysco's confidential, information or otherwise relating to Sysco's business, and any copies thereof (electronic or otherwise), other than documents relating to Silva's individual compensation, such as pay stubs and benefit plan booklets including but not limited to the USB device with Serial No. 37277FB963212583&0.

5.    Within five (5) days of the date of this Order, Silva is directed to produce for inspection and analysis all of his personal computers, smart phones, thumb drives and any other digital media storage devices to permit Sysco to confirm that Silva has completely removed all Sysco confidential information from the devices.

BY THE COURT:

_____
United States District Court Judge

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**SYSCO PHILADELPHIA, LLC,**

Plaintiff,

v.

**CLAUDIO SILVA,**

Defendant.

Case No.: 2:20-cv-06182

## PLAINTIFF SYSCO PHILADELPHIA, LLC'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Sysco Philadelphia, LLC ("Sysco"), by and through its undersigned counsel, respectfully moves this Court for entry of a Temporary Restraining Order and Preliminary Injunction to prevent irreparable harm to Sysco resulting from Defendant Claudio Silva's continued violations of his restrictive covenant agreement with Sysco. In support of this Motion, Sysco incorporates by reference its Verified Complaint, the accompanying Memorandum of Law, and all of the exhibits attached to those documents.

WHEREFORE, Plaintiff Sysco Philadelphia, LLC respectfully requests the Court grant its Motion and enter the proposed form of temporary restraining order attached hereto, and set a hearing on Sysco's Motion for Preliminary Injunction.

Respectfully submitted,

  s/Wayne C. Stansfield
Wayne C. Stansfield
Attorney Id. No. 81339
Kristen M. Ashe
Attorney Id. No. 322930

**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
Phone:  215-851-8100
wstansfield@reedsmith.com
kashe@reedsmith.com

*Attorneys for Plaintiff*
*Sysco Philadelphia, LLC*

Dated:  December 8, 2020

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SYSCO PHILADELPHIA, LLC**<br><br>                    Plaintiff,<br><br>        v.<br><br>**CLAUDIO SILVA,**<br><br>                Defendant. | Case No.: 2:20-cv-06182 |

**PLAINTIFF SYSCO PHILADELPHIA, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

**REED SMITH** LLP
Wayne C. Stansfield, Esq.
Kristen M. Ashe, Esq.
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103
215-851-8100 (phone)
215-851-8240 (fax)
wstansfield@reedsmith.com
kashe@reedsmith.com
*Attorneys for Sysco Philadelphia, LLC*

Dated:  December 8, 2020

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND.........................................................2

    A.    Sysco's Business in the Food Products Distribution Industry .................2

    B.    Silva Commences Employment and Executes His Restrictive Covenant Agreement ..................................................................................................2

    C.    In the Days Leading Up to Resignation, Silva Steals Sysco's Confidential Information .................................................................................................6

    D.    Silva Later Resigns, Immediately Begins Work at Competitor, and Refuses to Return Confidential Information.............................................7

III.    ARGUMENT .......................................................................................................8

    A.    The Standard For Issuance of a Temporary Restraining Order And Preliminary Injunction ...........................................................................8

    B.    Sysco Has Demonstrated a Reasonable Probability of Success ............9

        1.    Sysco Has Demonstrated a Reasonable Probability of Success that Silva Breached His Restrictive Covenant .......................................9

            a.    Silva's Restrictive Covenant Was Ancillary to the Employment Relationship and Was Supported by Adequate Consideration ..................................................................9

            b.    The Agreement Is Necessary to Protect Sysco's Legitimate Interests.........................................................................11

            c.    The Restrictions Are Reasonably Limited in Duration and Scope..............................................................................11

            d.    It Is Undisputed That Silva Breached the Agreement ..................12

        2.    Sysco Has Demonstrated a Reasonable Probability of Success that Silva Misappropriated Sysco's Trade Secrets in Violation of the Defend Trade Secrets Act ........................................................12

            a.    The Information Silva Stole Qualifies as a Trade Secret.............12

            b.    Silva Misappropriated the Trade Secrets ......................................13

            c.    Sysco's Trade Secrets Are Related to a Product or Service Used In, or Intended for Use In, Interstate or Foreign Commerce ......................................................................13

        3.    Sysco Has Demonstrated a Reasonable Probability of Success that Silva Misappropriated Sysco's Trade Secrets in Violation of the Pennsylvania Uniform Trade Secrets Act..................................14

            a.    The Information Silva Stole Qualifies as a Trade Secret.............14

           b.     Silva Misappropriated the Trade Secrets ........................................15

    4.     Sysco Has Demonstrated a Reasonable Probability of Success that Silva Stole Sysco's Trade Secrets ..............................................................16

C.     Sysco Is Threatened With Irreparable Harm .........................................16

D.     Silva Stands to Suffer Lesser Harm If Sysco Is Granted Injunctive Relief Than the Irreparable Harm Sysco Will Suffer Absent Such Relief ......................17

E.     Providing Sysco With Injunctive Relief Will Further the Public Interest ............18

IV.    CONCLUSION..............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Drug Corp. v. Am. Associated Druggists, Inc.*,
    No. 05-5927, 2008 WL 248933 (E.D. Pa. Jan. 29, 2008) .......................................15

*Arch Personal Care Prods., L.P. v. Malmstrom*,
    90 F. App'x 17 (3d Cir. 2003) ....................................................................................8

*Bimbo Bakeries USA, Inc. v. Botticella*,
    613 F.3d 102 (3d Cir. 2010).....................................................................................14

*CertainTeed Ceilings Corp. v. Aiken*,
    No. 14-3925, 2014 WL 5461546 (E.D. Pa. Oct. 27, 2014) .................................9, 11

*Den-Tal-Ez, Inc. v. Siemens Capital Corp.*,
    566 A.2d 1214 (Pa. Super. Ct. 1989) ......................................................................15

*Ecolaire Inc. v. Crissman*,
    542 F. Supp. 196 (E.D. Pa. 1982) ..............................................................................8

*Emergency Care Research Inst. v. Guidant Corp.*,
    No. 06-1898, 2007 WL 2702455 (E.D. Pa. Sept. 12, 2007)....................................14

*Fisher Bioservices, Inc. v. Bilcare, Inc.*,
    No. 06-567, 2006 WL 1517382 (E.D. Pa. May 31, 2006)..........................15, 17, 18

*FMC Corp. v. Control Solutions, Inc.*,
    369 F. Supp. 2d 539 (E.D. Pa. 2005) .........................................................................9

*Freedom Med. Inc. v. Whitman*,
    343 F. Supp. 3d 509 (E.D. Pa. 2018) ....................................................................9, 12

*Insulation Corp. of Am. v. Brobston*,
    667 A.2d 729 (Pa. 1995) ...........................................................................................10

*Maintenance Specialties Inc. v. Gottus*,
    314 A.2d 279 (Pa. 1974)............................................................................................10

*MarbleLife, Inc. v. Stone Res., Inc.*,
    759 F. Supp. 2d 552 (E.D. Pa. 2010) ........................................................................18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*,
    145 F. Supp. 2d 621 (M.D. Pa. 2001) .......................................................................17

*Nat'l Bus. Servs., Inc. v. Wright,*
    2 F. Supp. 2d 701 (E.D. Pa. 1998) ....................................................................16

*Nextgen Healthcare Info. Sys., Inc. v. Messier,*
    No. 05-cv-5230, 2005 WL 3021095 (E.D. Pa. Nov. 10, 2005) ..............................11

*Pulse Techs., Inc. v. Notaro,*
    67 A.3d 778 (Pa. 2013) ....................................................................................10

*Quaker Chem. Corp. v. Varga,*
    509 F. Supp. 2d 469 (E.D. Pa. 2007) ..............................................................8, 11

*Reivia Ashley, LLC v. Paselo Logistics, LLC,*
    No. 14-5092, 2017 WL 6001640 (E.D. Pa. Dec. 1, 2017)......................................16

*Ricoh USA, Inc. v. Bailon,*
    419 F. Supp. 3d 871 (E.D. Pa. 2019) ..................................................................10

*Ride the Ducks LLC v. Duck Boat Tours, Inc.,*
    No. 04-cv-5595, 2005 WL 670302 (E.D. Pa. Mar. 21, 2005) ...................................8

*Rita's Water Ice Franchise Co., v. S.A. Smith Enters., LLC,*
    No. 10-4297, 2011 WL 101694 (E.D. Pa. Jan. 11, 2011)................................11, 17

*Rohm & Haas Co. v. Lin,*
    992 A.2d 132 (Pa. Super. Ct. 2010) ....................................................................15

*SI Handling Sys. Inc. v. Heisley,*
    753 F.2d 1244 (3d Cir. 1985)..............................................................................14

*Siemens Bldg. Techs., Inc. v. Camacho,*
    168 F. Supp. 2d 425 (E.D. Pa. 2001) ..................................................................18

*SKF USA Inc. v. Okkerse,*
    992 F. Supp. 2d 432 (E.D. Pa. 2014) ..................................................................10

*Socko v. Mid-Atl. Sys. of CPA, Inc.,*
    126 A.3d 1266 (Pa. 2015)..................................................................................10

*Tantopia Franchising Co., v. W. Coast Tans of PA, LLC,*
    918 F. Supp. 2d 407 (E.D. Pa. 2013) ..................................................8, 16, 17, 18

*United States v. Bell,*
    414 F.3d 474 (3d Cir. 2005)..................................................................................8

*Zambelli Fireworks Mfg. Co. v. Wood,*
    592 F.3d 412 (3d Cir. 2010)................................................................................11

**Statutes**

12 Pa. C.S.A. § 5302 ........................................................................................................14

12 Pa. C.S.A. § 5303(a) ...................................................................................................15

18 U.S.C. § 1836(b)(1) .....................................................................................................12

18 U.S.C. § 1839(3) ..........................................................................................................12

18 U.S.C. § 1839(5)(A) .....................................................................................................13

18 U.S.C. § 1839(5)(B) .....................................................................................................13

## I.    INTRODUCTION

Plaintiff Sysco Philadelphia, LLC ("Sysco") respectfully requests issuance of immediate injunctive relief to remedy the wrongful and improper conduct of its former employee Claudio Silva ("Silva").  Sysco has recently learned that Silva has violated, and continues to violate, the important restrictions set forth in his restrictive covenant agreement.  For example, Sysco now has proof that in the days leading up to his resignation, Silva downloaded multiple Sysco documents onto an external USB device, all of which contain Sysco's confidential and proprietary information. Despite repeated requests of Silva to return the information, none of the documents have been returned and, upon information and belief, are still in Silva's possession. Armed with this information, Silva has since accepted employment at Driscoll Foods ("Driscoll"), a direct competitor of Sysco. In addition to this flagrant stealing of confidential information, Sysco has reason to believe that Silva is now using that information to Driscoll's benefit and is directly or indirectly soliciting customers he previously worked with at Sysco, which is another violation of his Agreement.

Through this action, Sysco seeks to enforce its agreement with Silva. Given the facts set forth below and in its Verified Complaint, incorporated herein by reference, Sysco more than satisfies the requirements for a preliminary injunction to maintain the status quo and prevent further harm.  Issuance of a temporary restraining order and preliminary and permanent injunction is therefore appropriate and necessary.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Sysco's Business in the Food Products Distribution Industry

Sysco is a leading distributor of food and related products primarily to the foodservice or food-away-from-home industry. Sysco provides these products and related services to its customers, which include supermarkets, restaurants, healthcare and educational facilities, lodging establishments, and other foodservice providers.

### B.    Silva Commences Employment and Executes His Restrictive Covenant Agreement

In and around July 6, 2015, Silva commenced employment with Sysco as a specialist and later transitioned into the role of sales consultant. Sysco sales consultants are charged with maintaining and developing customer goodwill and play a critical role in the maintenance and growth of Sysco's customer relationships. In his role as a sales consultant, Silva served as the primary sales contact for numerous Sysco customers, including but not limited to, Saker's Village; Talluto's, Altomontes, Bells and Colonial; Rastelli's and Haddon; Murphy's; Mccafrey's; and Starr.

In approximately June 2020, Sysco rolled out a new compensation program for all of its sales associates. The compensation program provided sales associates with increased base salaries, the potential for monthly bonus payments, and the option to receive stock units. Overall, this resulted in sales associates having a significantly greater earning capacity. In fact, Silva's base salary nearly tripled as a result of the change in compensation. Shortly thereafter, on June 15, 2020, in consideration of the new compensation program, Silva entered into the Sysco Protective Covenants Agreement. *See* Complaint ("Compl."), Exhibit A.

Sysco has invested substantial amounts of time and money in developing its trade secrets and confidential information including: (1) pricing, rebates, and other terms and conditions for

customers; (2) internal cost structures, margin information, and profitability information; (3) vendor cost and pricing information; (4) customer lists, customer needs and preferences, customer volumes and product preferences, and program offerings; (5) contracts with customers and vendors; and (6) confidential information regarding business strategies, sales strategies, and marketing strategies.

Such information would provide a competitor an unfair competitive advantage in the marketplace, including by allowing a competitor to offer more competitive pricing and other terms to customers than Sysco and to directly undercut Sysco's position in the food distribution industry. Recognizing the value of its customer relationships and confidential information, Sysco has taken reasonable precautions to maintain confidentiality including, but not limited to, ensuring that employees agree to, and comply with, their respective agreements, which includes appropriate protections for Sysco's confidential and trade secret information.

Pursuant to the Agreement, Silva acknowledged that he was being placed into a position of trust and confidence and that because of his position, he would be privy to Sysco's Confidential Information. *Id.* at § 1.1. Confidential Information is defined as including, but not limited to:

> an item of information, or a compilation of information, in any form (tangible or intangible), related to the Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by Associate or another person.

> Confidential Information includes, but is not limited to:

> (a) Company's business plans and analysis, customer and prospect lists, customer documents and information (including contact information, preferences, margins, order guides, and order histories), internal reports, internal business-related communications, marketing plans and strategies, research and development data, buying practices, human

resource information and personnel files, financial data, operational data, methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and (b) information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Company in confidence. Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement.

*Id*. at § 2.1.

In particular, Silva "acknowledge[d] that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of the Company, and thus, should be treated as Company's trade secrets." *Id*.

Section 2.2 of the Agreement governs the unauthorized use or disclosure of Sysco's Confidential Information and Silva "agree[d] to not engage in any unauthorized use or disclosure of Confidential Information (as defined above), or knowingly use Confidential Information to harm or compromise the interests of the Company." *Id*. at § 2.2. This restriction applied throughout Silva's employment and so long as the information continues to qualify as a trade secret or Confidential Information. *Id*. Silva also agreed that he would not "***use the Company's computers, servers, email systems, or other electronic communication or storage devices*** for personal gain, ***to compete or prepare to compete***, or to otherwise knowingly compromise a business interest of the Company; ***any activity in violation of this provision shall be considered unauthorized use harmful to the Company's business systems.***" *Id*. at § 2.3 (emphasis added).

The Agreement also requires employees – upon termination of their employment – to return "all documents, records and materials of any kind in [employees'] possession or under

[employees'] control, incorporating Confidential Information or otherwise, relating to Company's business, and any copies thereof (electronic and otherwise) . . . . [Employee] agrees that the obligation to return property extends to all information and property, not just Confidential Information." *Id.* Further, Silva agreed that:

> Upon request, [Silva] will provide for inspection any personal electronic storage devices that Company believes may contain Confidential Information, in a state that makes inspection possible, to permit Company to confirm that [Silva] has completely removed all Confidential Information from the devices. If [Silva] stores any Company information with a third-party service provider (such as Yahoo, Google Docs, DropBox, or iCloud), [Silva] consents to the service provider's disclosure of such information to the Company.

*Id.*

Silva's Agreement also sets forth restrictions governing his future employment. In particular, Silva agreed, for a period of one year following the termination of his employment, that he would not:

> in person or through others, solicit or communicate (regardless of who initiates the communication) with a Covered Customer to induce or encourage the Covered Customer to: stop or reduce doing business with Company; or, to buy or refer persons to a Competitor or Conflicting Product or Service.

*Id.* at § 3.3.

The term "Covered Customer" is defined under the terms of the Agreement as a customer that – in the two years prior to an employee's termination from Sysco – (i) had business-related contact or dealings with the employee, (ii) was serviced or sold to by another employee whom the employee at issue directly or indirectly supervised, (iii) was provided with a bid, proposal, pricing, margins, or other terms that the employee participated in determining or developing, or (iv) the employee learned confidential information about. *Id.* at § 3.1. Both Sysco and Silva "agree[d] that this restriction is inherently reasonable in its geography because it is limited to the places or locations where the Covered Customer is doing business at the time." *Id.* at § 3.3.

- 5 -

Under the terms of the Agreement, Sysco and Silva also recognized that injunctive relief might be necessary in the event of a breach of the Agreement. Accordingly, Section 4 of the Agreement provides:

> ***If Associate breaches or threatens to breach any of the restrictions or related obligations in this Agreement, the Company may recover***: (i) an order of specific performance or declaratory relief; (ii) ***injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction;*** (iii) damages; (iv) attorney's fees and costs incurred in obtaining relief; and (v) any other legal or equitable relief or remedy allowed by law. The parties agree that One Thousand Dollars ($1,000.00) shall be a reasonable amount of the bond to be posted if an injunction is sought by Company to enforce this Agreement and a bond is required.

*Id.* at § 4 (emphasis added).

### C.    In the Days Leading Up to Resignation, Silva Steals Sysco's Confidential Information

Unbeknown to Sysco, in the days leading up to his resignation, Silva stole documents that contained Sysco's confidential and trade secret information, including pricing, usage reports, and product files relating to numerous customers by copying them to a portable USB drive (Serial Number 37277FB963212583&0). The unlawfully downloaded information included confidential and proprietary information for Silva's former customers at Sysco, including Saker's Shop Rite, Murphy's Market, and Rastelli's Market. These customers alone comprise approximately 60 different accounts at Sysco.

There is no dispute about the above-mentioned conduct because Silva has admitted that he downloaded files from Sysco's system to the USB drive. Silva had no legitimate business reason to take this information on the eve of his resignation, and it is plain that his intention was to misappropriate Sysco's information for his own use at Driscoll.

**D.    Silva Later Resigns, Immediately Begins Work at Competitor, and Refuses to Return Confidential Information**

On October 15, 2020, Silva voluntarily resigned from his employment with Sysco. Silva's separation date was effective as of October 16, 2020.  After Silva's resignation, he became employed at Driscoll Foods ("Driscoll"), a direct competitor of Sysco. Like Sysco, Driscoll distributes food and related products and, according to its website, is an "independent food service distributor[] in the tri-state area."

Despite repeated demands for its return, Silva has failed and refused to return any of the above-described documents and information to Sysco in breach of his obligation to do so under the Agreement. Silva has failed to return any of the files or information or comply with any of Sysco's demands seeking information regarding Silva's use of its confidential business information.

In addition to stealing Sysco's confidential business information, Sysco has also learned that Silva unilaterally and continuously began increasing the pricing for at least one of Sysco's largest accounts, Saker's Shop Rite, in the weeks leading up to and including the week of his resignation. Silva's actions make clear that he wanted to artificially inflate Sysco's pricing in order to better position for himself for success at Driscoll. Sysco has recently learned that Driscoll is now using this sensitive pricing information to solicit Saker's Shop Rite and Sysco believes that Silva is either directly or indirectly using Sysco's confidential information for Driscoll's benefit.

## III.  ARGUMENT

### A.  <u>The Standard For Issuance of a Temporary Restraining Order And Preliminary Injunction</u>

The standard for entry of a temporary restraining order and preliminary injunction is well established.  As set forth by this Court, the standard for determining whether a party is entitled to injunctive relief involves a four-part inquiry:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Tantopia Franchising Co., v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 414 (E.D. Pa. 2013) (citing *United States v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005)); *Ride the Ducks LLC v. Duck Boat Tours, Inc.*, No. 04-cv-5595, 2005 WL 670302, at *4 (E.D. Pa. Mar. 21, 2005) (noting that "[t]he standard for a preliminary injunction is the same as that for a temporary restraining order").

Moreover, the grant of injunctive relief is entirely appropriate to enforce a restrictive covenant and protect an employer's confidential information. *See, e.g.*, *Arch Personal Care Prods., L.P. v. Malmstrom*, 90 F. App'x 17 (3d Cir. 2003) (affirming district court's preliminary injunctive relief to enforce a non-compete); *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469 (E.D. Pa. 2007) (granting motion for preliminary injunction in favor of former employer where former employee violated restrictive covenant in employment agreement); *Ecolaire Inc. v. Crissman*, 542 F. Supp. 196, 205 (E.D. Pa. 1982) ("[T]he use by an employee of his former employer's confidential information or trade secrets has been found to be irreparable harm warranting injunctive relief.").

As set forth below, Sysco has established that each of the requisite elements weighs in favor of a temporary restraining order and, subsequently, entry of a preliminary injunction.

**B.**     **Sysco Has Demonstrated a Reasonable Probability of Success**

In its Verified Complaint, Sysco alleges four causes of action and seeks injunctive relief. In order to satisfy the first element of seeking injunctive relief, Sysco is not required to establish with certainty that it will succeed on the merits. Rather, it must "make a prima facie case showing a reasonable probability that it will prevail on the merits." *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 555 (E.D. Pa. 2005) (internal quotation marks omitted). Here, for the reasons set forth below, Sysco can establish a reasonable probability of success for each of its actions.

**1.**     **Sysco Has Demonstrated a Reasonable Probability of Success that Silva Breached His Restrictive Covenant**

Under Pennsylvania law, post-employment restrictive covenants are enforceable if they: (1) relate to, or are ancillary, to an employment contract; (2) are supported by adequate consideration; (3) the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (4) the restrictions imposed are reasonably limited in duration and geographic extent. *See, e.g.*, *CertainTeed Ceilings Corp. v. Aiken*, No. 14-3925, 2014 WL 5461546, at *9 (E.D. Pa. Oct. 27, 2014); *see also Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 527-28 (E.D. Pa. 2018).

Here, Silva's Agreement clearly meets these criteria and Sysco can establish a reasonable probability of success.

**a.**     *Silva's Restrictive Covenant Was Ancillary to the Employment Relationship and Was Supported by Adequate Consideration*

Pennsylvania law requires restrictive covenants entered into after the employment relationship begins to be "supported by new consideration, which can be in the form of a

corresponding benefit or a beneficial change in employment status." *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 733 (Pa. 1995); *see also SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 449 (E.D. Pa. 2014); *Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 782 (Pa. 2013) ("While a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed upon at some later time it must be supported by new consideration."); *Maintenance Specialties Inc. v. Gottus*, 314 A.2d 279, 281 (Pa. 1974) ("Although the covenant not to compete must be ancillary to a contract of employment, it need not necessarily be executed simultaneously with the initial taking of employment.").

In order to determine whether there is adequate new consideration, Pennsylvania courts look to see whether there was a "change in the conditions of employment." *Gottus*, 314 A.2d at 281. In 2019, this Court recognized that "[n]ew consideration can be in the form of, *inter alia*, a promotion or a change to a compensation package." *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 876 (E.D. Pa. 2019). The Pennsylvania Supreme Court has also recognized adequate consideration as including promotions, change in status (i.e., from part-time to full-time employment), and a change to a compensation package of bonuses, insurance benefits, and severance benefits. *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1275 (Pa. 2015).

Here, while Silva's Agreement was not part of his initial employment contract with Sysco, it followed a beneficial change to Silva's compensation package. In June 2020, Sysco changed the compensation package for its sales associates, resulting in Silva's base salary to nearly triple. Compl. ¶¶ 15-16. Around the same time, and in consideration for the new compensation program, Silva entered into the Agreement on June 15, 2020. *Id.* at ¶ 17. As a result, Silva's Agreement relates to his employment at Sysco and is supported by adequate consideration.

### b. *The Agreement Is Necessary to Protect Sysco's Legitimate Interests*

The Agreement seeks to protect Sysco's confidential business information and customer relationships. These are legitimate interests worthy of protection under Pennsylvania law. *See, e.g.*, *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 424 (3d Cir. 2010) (applying Pennsylvania law, and finding that "legitimate business interests include trade secrets, confidential information, goodwill, unique or extraordinary skills, and specialized training that would benefit competitors," and ruling that the restrictive covenant was enforceable); *Quaker Chem.*, 509 F. Supp. 2d at 478 (noting that "[a]n employer has a legitimate interest in preventing an employee from leaving to work for a competitor, carrying with him the employer's goodwill, specialized training, and confidential information").

### c. *The Restrictions Are Reasonably Limited in Duration and Scope*

The Agreement is reasonably limited in time (one year) and geographic scope (places or locations where the Covered Customer is doing business at the time). Pennsylvania courts have not hesitated to enforce nationwide territory restrictions, restrictions of former sales territories, and restriction periods of two years have been upheld as reasonable. *See, e.g.*, *Nextgen Healthcare Info. Sys., Inc. v. Messier,* No. 05-cv-5230, 2005 WL 3021095, at *13 (E.D. Pa. Nov. 10, 2005) ("Nationwide non-compete restrictions are enforceable under Pennsylvania law where the former employer does business on a nationwide scale."); *CertainTeed*, 2014 WL 5461546, at *11 (concluding that the geographic scope of a non-compete agreement is reasonable when it is limited to plaintiff's former sales territory); *Rita's Water Ice Franchise Co., v. S.A. Smith Enters., LLC*, No. 10-4297, 2011 WL 101694, at *7 (E.D. Pa. Jan. 11, 2011) (two year non-compete covenant reasonable).

        **d.**    *It Is Undisputed That Silva Breached the Agreement*

As set forth above, Silva admits to downloading Sysco's confidential and proprietary information prior to resigning. Silva had no legitimate business reason to transmit this information on the eve of his resignation, and it is plain that his intention was to misappropriate Sysco's information for his own use at Driscoll. Moreover, Silva continues to breach the Agreement by failing to return Sysco's confidential information.

        **2.**    **Sysco Has Demonstrated a Reasonable Probability of Success that Silva Misappropriated Sysco's Trade Secrets in Violation of the Defend Trade Secrets Act**

The Defend Trade Secrets Act ("DTSA") authorizes a private civil action by (1) any owner of a trade secret; (2) that is misappropriated; (3) if the trade secret is related to a product or service used in, or intended for use in, interstate of foreign commerce. 18 U.S.C. § 1836(b)(1).

        **a.**    *The Information Silva Stole Qualifies as a Trade Secret*

The DTSA defines trade secret as:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –

(A)    the owner thereof has taken reasonable measures to keep such information secret; and

(B)    the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Id.* at § 1839(3).

Pennsylvania courts have routinely held that documents relating to pricing and business plans qualify as trade secrets under the DTSA. *See, e.g.*, *Freedom Med. Inc.*, 343 F. Supp. 3d at 518-22) (noting that "'[a]lthough the [Defend Trade Secrets Act and the Pennsylvania Uniform

Trade Secret Act] use different wording to define a trade secret, they essentially protect the same type of information'" and holding that plaintiff's pricing information is a protected trade secret that could be used to undercut plaintiff in the industry).

Additionally, Sysco took reasonable measures to keep the information secret by requiring employees like Silva to sign the restrictive covenant agreements. Compl. ¶ 20. The information also derives independent economic value and would provide a competitor an unfair competitive advance in the marketplace. *Id.* at ¶¶ 19, 23, 70. In fact, Silva "acknowledge[d] that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of the Company, and thus, should be treated as Company's trade secrets." Agreement at § 2.1.

**b.    *Silva Misappropriated the Trade Secrets***

The DTSA defines misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or the "disclosure or use" of a trade secret without the consent of the owner. 18 U.S.C. § 1839(5)(A)-(B).

Here, Silva stole Sysco's trade secrets by downloading them to a portable USB drive in the days leading up to his resignation. He knew that he was not to use Sysco's technology to steal confidential information for a competitor's benefit and that he was supposed to return the information following his termination. Compl. ¶¶ 25-26.

**c.    *Sysco's Trade Secrets Are Related to a Product or Service Used In, or Intended for Use In, Interstate or Foreign Commerce***

As set forth in its Complaint, Sysco's trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce. Compl. ¶ 76.

3. **Sysco Has Demonstrated a Reasonable Probability of Success that Silva Misappropriated Sysco's Trade Secrets in Violation of the Pennsylvania Uniform Trade Secrets Act**

Under Pennsylvania law, a person misappropriates a trade secret "when he acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality" or "discloses or uses that trade secret without the other's consent." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 110 (3d Cir. 2010); *see also* 12 Pa. C.S.A. § 5302 (providing definition of misappropriation).

a. *The Information Silva Stole Qualifies as a Trade Secret*

The Pennsylvania Uniform Trade Secrets Act ("PUTSA") defines trade secrets as:

Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. C.S.A § 5302.

The relevant factors under Pennsylvania law are "substantial secrecy and competitive value to the owner." *Emergency Care Research Inst. v. Guidant Corp.*, No. 06-1898, 2007 WL 2702455, at *4 (E.D. Pa. Sept. 12, 2007) (internal quotation marks omitted).

Courts in the Third Circuit and Pennsylvania have routinely held that documents relating to pricing and business plans qualify as trade secrets under the PUTSA. *See, e.g.*, *Bimbo Bakeries*, 613 F.3d at 110 (affirming district court's holding that strategies for increasing profitability, business road maps, promotional strategies, and cost positions can qualify as trade secrets); *SI Handling Sys. Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (determining that cost and pricing information not readily obtained by anyone in the industry qualified as trade

secrets); *AmerisourceBergen Drug Corp. v. Am. Associated Druggists, Inc.*, No. 05-5927, 2008 WL 248933, at *25 (E.D. Pa. Jan. 29, 2008) ("It is clear that a compilation of data that has independent economic value can be protected as a trade secret."); *Fisher Bioservices, Inc. v. Bilcare, Inc*., No. 06-567, 2006 WL 1517382, at *16 (E.D. Pa. May 31, 2006) (noting the manner and method that a company uses to price its services qualifies as a protected  trade secret under the PUTSA); *Rohm & Haas Co. v. Lin,* 992 A.2d 132, 143 n.4 (Pa. Super. Ct. 2010) ("A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." (internal citation omitted)); *Den-Tal-Ez, Inc. v. Siemens Capital Corp*., 566 A.2d 1214, 1230 (Pa. Super. Ct. 1989) (stating that inventory data and projections, unit costs and product-by-product profit margin qualify as trade secrets because competitors can "ascertain [plaintiff's] pricing methods and more effectively compete").

Here, the information at issue has been kept secret and provides competitive value to Sysco. The pricing information in particular would provide competitors – like Driscoll – a competitive advantage when competing in the same industry.

**b.**    ***Silva Misappropriated the Trade Secrets***

Here, for the reasons set forth above, Silva owed a duty of confidentiality to Sysco and violated that when he improperly downloaded Sysco's confidential information and refused to return it. Further, Pennsylvania law allows courts to enjoin "the actual or threatened misappropriation" of a trade secret. 12 Pa. C.S.A. § 5303(a). As a result, Sysco seeks an order from the Court enjoining Silva from disclosing any of Sysco's trade secrets to Driscoll.

4.      **Sysco Has Demonstrated a Reasonable Probability of Success that Silva Stole Sysco's Trade Secrets**

To establish a prima facie case of conversion under Pennsylvania law, the plaintiff must establish: "(1) the deprivation of another's right of property in, or use or possession of, a chattel or other interference therewith, (2) without the owner's consent, and (3) without lawful justification." *Reivia Ashley, LLC v. Paselo Logistics, LLC*, No. 14-5092, 2017 WL 6001640, at *17 (E.D. Pa. Dec. 1, 2017) (internal quotation marks omitted). "To establish conversion, the plaintiff must establish that the defendant wrongfully took property from the plaintiff." *Id.* (internal quotation marks omitted).

Here, Sysco satisfies each of the elements. By stealing Sysco's trade secrets, Silva (1) has deprived Sysco of being the sole and exclusive owner of this information; (2) took this information without Sysco's consent; and (3) without any lawful justification.

C.      **Sysco Is Threatened With Irreparable Harm**

Sysco has demonstrated that it is faced with the immediate threat of irreparable harm as a result of Silva's actions.  Irreparable harm is shown where there is injury that cannot adequately be compensated by monetary damages.  *Tantopia*, 918 F. Supp. 2d at 417.  This Court has recognized that grounds for irreparable harm include "loss of control of reputation, loss of trade, and loss of goodwill."  *Id.* (internal quotation marks omitted); *see also Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) (noting that former employer would suffer irreparable harm due to the fact that the former employee had "a wide-ranging knowledge of [plaintiff's] business, products and customers, which would be impossible for her not to call on" while working for the former employer's competitor).

Further, breach of a restrictive covenant prohibiting competition, solicitation, and the use and/or disclosure of confidential information causes irreparable harm that only an injunction can

address. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chamberlain*, 145 F. Supp. 2d 621, 625-26 (M.D. Pa. 2001) (("[I]t is well recognized that injunctive relief is necessary in cases involving violations or threatened violations of restrictive covenants… injunctive relief is necessary to avoid [the] irreparable harm…"); *see also Fisher Bioservices, Inc.*, 2006 WL 1517382, at \*20 ("Injury to goodwill and the use of a company's confidential information are the types of injuries which would constitute irreparable harm that cannot be compensated with monetary damages.").

Therefore, Sysco has demonstrated that it faces irreparable harm.

**D.    Silva Stands to Suffer Lesser Harm If Sysco Is Granted Injunctive Relief Than the Irreparable Harm Sysco Will Suffer Absent Such Relief**

Granting Sysco the requested injunctive relief it seeks will not cause greater harm to Silva compared to the harm that Sysco will suffer if its Motion is not granted.  In fact, in similar cases, courts within the Third Circuit have consistently concluded that the harm to the former employer is greater than that to the former employees. *See, e.g.*, *Rita's*, 2011 WL 101694, at \*7 (finding that the harm to the former employer outweighed any harm to the former employees when "the harm to defendants is of their own making," as they "were aware of any potential harm when they signed [the restrictive covenant]"); *Tantopia*, 918 F. Supp. 2d at 419 (any injury suffered by former employees is "significantly outweighed" by harm to former employer when any harm caused to former employees with respect to the injunction "was created or caused by their decision to [violate restrictive covenants] within the protected territory of the Non-Compete Covenant").

Here, the issuance of an injunction in this case would merely retain the status quo and require Silva to live up to the reasonable restrictions set forth in his Agreement, which he voluntarily entered into and received consideration for. Moreover, the Agreement provides that

Sysco would be entitled to injunctive relief in the event of litigation, and thus Silva has no equitable claim to harm caused by an injunction issued in response to his own deliberate actions.

### E.    Providing Sysco With Injunctive Relief Will Further the Public Interest

Finally, enforcement of the Agreement will not harm the public in any way. Pennsylvania courts are clear that the public has an interest in upholding and enforcing restrictive covenants that the employee freely entered into, particularly where the employee brought that hardship on his or herself.  *See, e.g.*, *Tantopia*, 918 F. Supp. 2d at 420 ("Courts have held that 'the public interest is served by fulfilling the contractual interests of the parties . . . .'"); *MarbleLife, Inc. v. Stone Res., Inc.*, 759 F. Supp. 2d 552, 563 (E.D. Pa. 2010) ("As this is in essence a breach of contract dispute, the public interest favors enforcing valid contracts and making parties live up to their agreements."); *Fisher Bioservices, Inc.*, 2006 WL 1517382, at *21 (granting injunctive relief will serve the public interest because it will "discourage . . . the wrongful use of confidential information and trade secrets"); *Siemens Bldg. Techs., Inc. v. Camacho*, 168 F. Supp. 2d 425, 427 (E.D. Pa. 2001) ("As a general matter, it is in the public interest to enforce valid contractual obligations and to protect legitimate business interests.").

As such, Sysco has satisfied all elements necessary for issuance of a temporary restraining order and preliminary injunction are present in this case. Accordingly, Sysco's Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff Sysco Philadelphia LLC respectfully requests the Court grant its Motion and enter the proposed form of temporary restraining order attached hereto, and set a hearing on Sysco's Motion for Preliminary Injunction.

Respectfully submitted,


  s/Wayne C. Stansfield
Wayne C. Stansfield
Attorney Id. No. 81339
Kristen M. Ashe
Attorney Id. No. 322930
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
Phone:  215-851-8100
wstansfield@reedsmith.com
kashe@reedsmith.com

*Attorneys for Plaintiff*
*Sysco Philadelphia, LLC*

Dated: December 8, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Wayne C. Stansfield, do hereby certify that true and correct copies of the foregoing Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support Thereof were served upon the following counsel for Defendant Claudio Silva this 8th day of December by overnight mail and email:

Robert C. Nagle
Fox Rothschild LLP
10 Sentry Parkway
Suite 200 P.O. Box 3001
Blue Bell, PA 19422
rnagle@foxrothschild.com

*Counsel for Defendant Claudio Silva*

<u>*/s/ Wayne C. Stansfield*</u>
Wayne C. Stansfield